DRAKE *v.* GRANT *et al.*

(*Supreme Court, General Term, First Department.* March 29, 1889.)

</div>

1. DECEIT—ACTION FOR—WHEN LIES.
   The defendant, who was a director of a certain corporation, induced plaintiff to purchase some of its bonds, asserting that it was in good financial condition, and that the bonds were "as good as government bonds." The plaintiff had told the defendant that he knew nothing of the condition of the corporation, but that if he would assure him that the bonds were all right he would take them. *Held*, that plaintiff had a right to rely on such representations, and on their proving false could bring deceit.

2. SAME—PROOF.
    Where there was evidence that the corporation was insolvent at the time of the sale of the bonds, it was for the jury to say whether the defendant made such representations with intent to deceive.

Appeal from circuit court.

Action by Simeon J. Drake against B. Suydam Grant and others. Judgment was given for plaintiff, and defendants appeal.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*Abbott Bros.*, for appellants.    *John R. Dos Passos*, for respondent.

MACOMBER, J.   The action was originally begun against one Washington Lee, to charge him in damages for fraud and deceit by which the plaintiff was induced to purchase of him 10 bonds of $1,000 each of the Long Beach Improvement Company.   When this cause was before this court upon an appeal by the plaintiff from a judgment entered upon the verdict of a jury, (36 Hun, 464,) the court held that the representations which were shown to have been made by Mr. Lee were sufficient to be submitted to the jury, and directed a new trial, mainly upon the ground of error of the trial judge in charging the jury that a representation that these bonds were as good as government bonds, though false, was not actionable.   The court there said: "This direction withdrew what was relied upon as a material misrepresentation, made by the testator to the plaintiff in the course of their negotiations.   It was not, as the court assumed it to be, a mere opinion expressed by the testator, but it was a fact asserted by him that the bonds which were offered to the plaintiff were as good as government bonds.   The intention was to impress the plaintiff with the conviction that they could safely be made the subject of investment on his part, and that the testator knew that to be their character."   Under that decision, it was incumbent upon the trial court to submit the evidence, which consists mainly of that of the wife of the plaintiff, to the jury. She says: "Mr. Lee remarked: 'It's [Long Beach] a delightful place, and you no doubt want to come here every summer with your family, and you ought to have some of these bonds,'—the first mortgage Long Beach Improvement Company's bonds.   Mr. Drake replied he did not know anything about the bonds,—about the investment.   Col. Lee said: 'You can rely upon me; I am a director, and know all about it;' or, in other words, that he had the 'inside track.'   That was the expression he used.   He also said: 'They are just as good as government bonds.'   Some interest had already accrued upon them. He also said the company was in good financial condition.   'I will let you have ten bonds for $9,000.'   My husband replied that he had some money he could invest, and that if he would assure him the bonds were all right, and the company in good condition, he would take them."   It further appeared from this lady's testimony that Mr. Drake told Mr. Lee that he (Drake) knew nothing of the condition of the company, and that Mr. Lee replied: "You can rely upon my statements; I know all about it."   The testimony of the plaintiff's wife is not disputed by other witnesses.

This evidence showed, first, that Col. Lee, who is admitted to have been an active director of the corporation, assumed to know exactly the financial condition of his company; that he had had opportunities to observe in the past its transactions, and he knew whereof he spoke.   When he used the expression that the bonds were as good as government bonds, it was manifest that he did not mean to be understood, and was not in fact understood, as asserting that they were worth as much money as a like number in the same amount of the government bonds of the United States.   Nobody would so understand an assertion of that kind.   But it was a strong way of asserting positively that the company was in a good financial condition, and that the bonds for that reason were a safe investment.   The plaintiff was not in a position to know the condition of the company, and did not know of its con-

dition, except as it had been disclosed to him by Mr. Lee. This fact was well known to Mr. Lee. That the plaintiff purchased these bonds, relying upon these representations, is not seriously disputed in the case. When representations of this character are made by a person who asserts himself to be, and actually is, in a position to know the financial condition of a corporation whose bonds are the subject of negotiation and sale, it cannot be said that they are mere expressions of opinion, and that the purchaser must inquire for himself, and act upon his own judgment. He has a right to rely upon assertions of this description, and, relying thereon, if he is injured, he may have recourse in this form of action, if the representations were untrue. That the representations were false is also shown by the evidence. The collapse of the company followed soon upon the sale of these bonds. The evidence of the book-keeper is quite conclusive that the company was wholly insolvent at the time of this sale of the bonds, and is corroborated by various exhibits in the case. The question whether or not Mr. Lee made the representations thus knowingly, with intent to deceive the plaintiff, is one, under all the circumstances, peculiarly within the province of a jury. Their conclusion, as is usual in this class of cases upon this branch of the case, is to be derived from a consideration of the whole case, and drawn mainly as an inference from the well-established and undisputed evidence. We are unable to say that the inference of an intent to deceive was unjustly drawn by the.jury. It follows that the judgment entered upon the verdict should be affirmed, with costs.

All concur.